**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated:  January 12 2021**

_John P. Gustafson_
John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 19-30310 |
| | ) | |
| Christopher M. Martin, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 19-03046 |
| | ) | |
| Douglas Dymarkowski, Trustee, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff. | ) | |
| v. | ) | |
| | ) | |
| Kathleen E. McConegly, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING PLAINTIFF'S

### MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

This cause is before the court on Plaintiff-Trustee Douglas Dymarkowski's ("Plaintiff" or "Trustee") Motion for Summary Judgment. Plaintiff-Trustee is the duly appointed Chapter 7 Trustee of the bankruptcy estate of Debtor Christopher M. Martin ("Debtor"). Plaintiff-Trustee filed a Complaint to Avoid Fraudulent Transfer and Recover Property against Defendant Kathleen E. McConegly ("Defendant"), who received a transfer of $21,000.00 from the Debtor in September 2018 ("Transfer").

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. The Chapter 7 case and all proceedings in it arising under Title 11, including this adversary proceeding, have been referred to this court for decision. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(H). Venue is proper pursuant to 28 U.S.C. §1409(a).

## FACTUAL BACKGROUND

On summary judgment the types of evidence the court may consider are governed, in part, by Federal Rule of Civil Procedure 56(c)(1)(A)-(B),[1] which states:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[1] Formerly Fed.R.Civ.P. 56(e).

19-03046-jpg    Doc 34    FILED 01/12/21    ENTERED 01/12/21 13:30:25    Page 2 of 27

Federal Rule of Civil Procedure 56(c)(3) further provides that: "The court need consider only the cited materials, but it may consider other materials in the record."

Plaintiff submitted the following in support of their motion:

1. Debtor's Huntington Bank checking account statement showing a deposit of $21,466.67 on September 6, 2018 and a payment of $21,000.00 on September 10, 2018 attached as Exhibit A. [Adv. Doc. #28, p. 19].

2. A copy of a check made out to Defendant in the sum of $21,000.00 attached as Exhibit B. [Adv. Doc. #28, p. 20].

3. Defendant's PNC bank account statement indicating a deposit of $21,000.00 on September 10, 2018 attached as Exhibit C. [Adv. Doc. #28, p. 21].

4. An unsigned document titled "Final Borrower's Statement" attached as Exhibit D. [Adv. Doc. #28, pp. 22-24].

5. Plaintiff's First Set of Requests for Admission, Interrogatories and Requests for Production of Documents attached as Exhibit E. [Adv. Doc. #28, pp. 25-41].

6. A Property Record Card attached as Exhibit F. [Adv. Doc. #28, pp. 42-43].

7. The United States Trustee's Complaint to Deny Discharge of Christopher M. Martin or to Dismiss for Abuse. [Adv. Doc. #33-1].[2]

8. Debtor's Answer to an amended complaint filed by the United States Trustee in a separate Adversary Case No. 19-03016, this exhibit is attached as Exhibit H.[3] [Adv. Doc. #28, pp. 51-57].

9. A Memorandum of Opinion by the Honorable Russ Kendig, United States Bankruptcy Judge for the Northern District of Ohio, Eastern Division, attached as Exhibit I. [Adv. Doc. #28, pp. 58-66].

Defendant submitted the following in support of their Objection to Summary Judgment:

1. Declaration of Kathleen E. McConegly. [Adv. Doc. #32, pp. 9-11].

---

2/ On September 15, 2020, Plaintiff submitted a Substitution of Exhibit to Plaintiff's Motion attaching Exhibit G. [Adv. Doc. #33].

3/ The Debtor in the underlying bankruptcy case was a Defendant in a separate Adversary Case, Case No. 19-03016.

2. Declaration of Christopher Martin. [Adv. Doc. #32, pp. 12-13].

3. Debtor's Edward Jones Traditional Individual Retirement Account – Select statement, including information to complete a 2018 Form 1099-R, attached as Exhibit A. [Adv. Doc. #32, pp. 14-21].

Neither party objected to the exhibits offered by the opposing party under Federal Rule of Civil Procedure 56(c)(2). *See generally, In re LTC Holdings, Inc.*, 596 B.R. 797, 802 n. 14 (Bankr. D. Del. 2019)(discussing the 2010 amendments to Rule 56 streamlining the summary judgment process).

It should be noted that statements made in briefs are not facts that the court can consider in deciding a motion for summary judgment.[4]   Accordingly, statements from the briefs that lack record support do not appear in the "Factual Background" section because they are not evidence the court can properly consider as supporting the Motion for Summary Judgment and Objection to Summary Judgment.

Before the purchase of the residential property located at 110 Columbus Ave, Huron, Ohio ("Property"), Defendant asserts that she owned a home and was the co-signer on her daughter's college loans and could not obtain financing for the Property on her own. [Adv. Doc. #28, Ex. E, p. 35, Q. #13].   About two weeks before the September 24, 2018 closing of the Property, Defendant's bank denied her a bridge loan that Defendant planned on using to finance the purchase of the Property. [*Id.*; Adv. Doc. #32, pp. 9, 12, Declaration of Kathleen E. McConegly, ¶¶2-3, Declaration of Christopher Martin, ¶4].   Defendant asserts she was unsure she would qualify for another loan. [Adv. Doc. #28, Ex. E, p. 35, Q. #13; Adv. Doc. #32, p. 9, Declaration of Kathleen E. McConegly, ¶3].

---

4/   *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006)("It is well established that statements appearing in a party's brief are not evidence."); *see also*, *Ragone v. Pizza Pan Elyria, LLC (In re Ragone)*, 2019 WL 2202941, *5, 2019 Bankr. LEXIS 1548, **13-15 (Bankr. N.D. Ohio May 21, 2019)(citations omitted)(collecting cases).

4

Debtor decided to help Defendant with the down payment for the Property. [Adv. Doc. #28, Ex. E, p. 35, Q. #14; Adv. Doc. #32, pp. 9-10, 13, Declaration of Kathleen E. McConegly, ¶¶4-5, Declaration of Christopher Martin, ¶6]. On or about September 6, 2018, Debtor withdrew $23,946.69[5] from his Individual Retirement Account ("IRA"). [Adv. Doc. #28, Ex. E, p. 35, Q. #14; Adv. Doc. #28, Ex. A, p. 19; Adv. Doc. #32, pp. 9, 13, Declaration of Kathleen E. McConegly, ¶7, Declaration of Christopher Martin, ¶7; Adv. Doc. #32, Ex. A, p. 16]. On September 6, 2018, Debtor drew a check made payable to Defendant for $21,000.00. [Adv. Doc. #28, Ex. B, p. 20,]. That same day, Defendant presented the check from Debtor at Defendant's bank. [Adv. Doc. #28, Ex. C, p. 21; Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶7]. On September 24, 2018, Defendant purchased the Property. [Adv. Doc. #28, Ex. E, p. 35, Q. #14; Adv. Doc. #28, Ex. D, p. 22; Adv. Doc. #32, p. 9, Declaration of Kathleen E. McConegly, ¶2].

Defendant and Debtor now claim that at the time of the Transfer Debtor intended to move in with Defendant and get married,[6] claiming that they both planned and expected to get married after Defendant purchased the Property and as Defendant's son progressed further through college. [Adv. Doc. #28, Ex. E, pp. 35-36, Q. #15; Adv. Doc. #32, pp. 10, 13, Declaration of Kathleen E. McConegly, ¶10, Declaration of Christopher Martin, ¶9]. Debtor and Defendant's basis for the Transfer was their marriage in the near future. [Adv. Doc. #28, Ex. E, pp. 35-36, Q. #15; Adv. Doc. #32, pp. 9, 13, Declaration of Kathleen E. McConegly, ¶5, Declaration of Christopher Martin,

---

5/ After Federal and State tax withholdings, the remaining funds totaled $21,466.47. [Adv. Doc. #32, pp. 10, 13, Declaration of Kathleen E. McConegly, ¶7, Declaration of Christopher Martin, ¶6; Adv. Doc #32, p. 14, Ex. A]. In Official Form 107 (Statement of Financial Affairs for Individuals Filing for Bankruptcy), Part 7: "List Certain Payments or Transfers," Debtor did not list this withdrawal. *See,* [No. 19-30310, Doc. #1, p. 35].

6/ As part of Defendant's defense, she relies on Debtor's Declaration. [Adv. Doc. #32, p. 12, Declaration of Christopher Martin]. However, Debtor's declarations conflicts with his testimony at the First Meeting of Creditors. *Compare* [Adv. Doc. #33-1, p. 5](At Debtor's Meeting of Creditors, Debtor provided that Defendant and Debtor were only "dating" and their relationship was "nothing serious.") *with* [Adv. Doc. #32, p. 12, Declaration of Christopher Martin, ¶9]("I intended to move in with [Defendant] since we hoped to get married in the future.").

¶5].

Defendant is the sole title owner of the Property. [Adv. Doc. #32, p. 9, Declaration of Kathleen E. McConegly, ¶6]. The Declarations of both Defendant and Debtor[7] aver that they began living together at the Property in January 2019. [Adv. Doc. #32, pp. 10, 12, Declaration of Kathleen E. McConegly, ¶12, Declaration of Christopher Martin, ¶11]. Defendant also states that she believed Debtor would have an ownership interest in the Property because Debtor's funds allowed Defendant to complete the purchase of the Property. [Adv. Doc. #28, Ex. E, p. 35-36, Q. #15; Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶9]. Additionally, Debtor's contribution to the expenses related to the Property, such as the monthly rent and upkeep related to the home, furthered Defendant's belief that Debtor had some type of interest in the Property. [Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶9].

The Debtor filed for relief under Chapter 7 of Title 11 of the United States Code on or about February 7, 2019. [19-30310, Doc. #1;[8] Adv. Doc. #32, p. 13, Declaration of Christopher Martin, ¶8]. At the time of filing, the Debtor did not disclose an interest in any retirement or pension account. [Adv. Doc. #32, p. 13, Declaration of Christopher Martin, ¶8]. Nor did Debtor disclose[9] the Transfer, nor did he disclose either the existence of the IRA, which appears to have

---

7/ In Debtor's Declaration, he states that he "intended to move in with [Defendant]." [Adv. Doc. #32, p. 13, Declaration of Christopher Martin, ¶12]. Yet at Debtor's Meeting of Creditors he responded "no" when asked, "did someone live with you on the day you filed bankruptcy?" and after being asked "[Defendant] does not live at the [Property]?" Debtor responded, "no she does not." [Adv. Doc. #33-1, Ex. G, pp. 4, 5]. Additionally, Plaintiff's seventeenth interrogatory asks the Defendant to list and disclose the time period in which you resided at the real property located at 110 Columbus, Avenue, Huron, Ohio, in which Defendant answers "I lived here from November 2018 through the present time." [Adv. Doc. # 28, Ex. E, p. 26, Q. #17].

8/ References to the docket in the "Main Case," Case No. 19-30310, will be cited as [Doc. #_]. References to the docket in this Adversary Case, Case No. 19-03046, will be cited as [Adv. Doc. #_].

9/ See *infra* Part IV.

19-03046-jpg    Doc 34    FILED 01/12/21    ENTERED 01/12/21 13:30:25    Page 6 of 27

been held in an Edward Jones account.[10] [Adv. Doc. #28, pp. 35-36, Q. ##13, 18, & 20; Adv. Doc. #21, pp. 14-21].

Debtor owes approximately $4,400.00 in taxes based on Debtor's IRA withdrawal, which Defendant states she had verbally committed to pay. [Adv. Doc. #28, Ex. E, p. 35, Q. #13; Adv. Doc. #32, pp. 10, 13, Declaration of Kathleen E. McConegly, ¶8, Declaration of Christopher Martin, ¶12].

Since moving into the Property, Debtor and Defendant assert that Debtor has saved on monthly expenses: "as a result of moving in, the utilities, insurance, internet, cable, and 'rent' are reduced below what he was paying before he moved into" the Property. [Adv. Doc. #28, Ex. E, p. 36-37, Q. #19; Adv. Doc. #32, p. 10, 13, Declaration of Kathleen E. McConegly, ¶12, Declaration of Christopher Martin, ¶¶10, 11]. The Debtor and Defendant assert that Debtor canceled a storage rental agreement of $100.00 a month[11] since he can now use the garage at the Property. [*Id.*]. Living at the Property has also allowed Debtor to save thirty miles a day in his commute to work. [*Id.*]. Additionally, Defendant asserts that the Debtor has saved money on insurance costs and laundry, since he can now do laundry at the Property.[12] [*Id.*]. Lastly, Debtor and Defendant claim

---

10/ A Huntington bank account statement showing a transfer into the account of $21,466.47 from "Edward Jones Investment." [Adv. Doc. #28, Ex. A]. Debtor's "Traditional Individual Retirement Account – Select" statement dated from September 1, 2018 to September 28, 2018 and 2018 Form 1099-R. [Adv. Doc. #32, pp. 14-21]. Q. 21 of Official Form 106A/B, Schedule A/B: Property asks the debtor if they "own or have any legal or equitable interest in any of the following?" Debtor checked the box indicating "no" when asked if Debtor had any "Retirement or pension accounts." [Doc. #1, p. 13]

11/ Debtor's Schedule J reflects $100 a month going for storage. [Doc. #1, Schedule J, p. 30, Line 17c]. On Line 24 of Schedule J, Debtor checked the box stating "no," he did not expect an increase or decrease in his expenses in the year after filing. [*Id.*].

12/ Debtor did not list any laundry expenses on Schedule J. [Doc. #1, Schedule J, p. 30, Line 9]. Debtor is subject to impeachment at trial for his prior allegedly inconsistent statements. However, at this stage in the proceedings, this court is required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S. Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

7

the move improved his overall health since this new environment, unlike his prior residence, does not contribute to his health problems. [*Id.*].

On April 29, 2019, the Office of the United States Trustee filed an adversary action against the Debtor, objecting to his discharge under 11 U.S.C. §727(c), (d), and (e). [Adv. Case No. 19-03016, Doc. #1]. The adversary was resolved by an Agreed Judgment Entry Denying Discharge of the Debtor. [Adv. Case. 19-03016, Doc. #16[13] & #17 entered Dec. 16, 2019].

On August 6, 2019, Plaintiff-Trustee filed his Complaint in this adversary proceeding seeking avoidance of Debtor's Transfer of $21,000.00 to Defendant. [Adv. Doc. #1].

Defendant and Debtor were married on January 23, 2020. [Adv. Doc. #28, Ex. E, pp. 35-36, Q. #15; Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶10].

On May 26, 2020 this court entered an Adversary Proceeding Scheduling Order, [Adv. Doc. #26], designating July 3, 2020 as the final day to file a motion for summary judgment, and July 20, 2020 as the final day to file any response. [Doc. #26]. On July 2, 2020, Plaintiff filed his Motion for Summary Judgment ("Motion"). [Doc. #28]. Defendant did not file her own Motion for Summary Judgment. Defendant initially had until July 20, 2020 to file a response, but this court granted an extension through July 24, 2020. [Adv. Doc. #31]. On July 24, 2020, Defendant filed an Objection to Motion for Summary Judgment ("Objection"). [Adv. Doc. #32].

In Plaintiff's Motion, Plaintiff seeks summary judgment on Plaintiff's second and third claims of his Complaint to Avoid Fraudulent Transfer and Recover Property ("Complaint"), arguing that the Transfer is subject to avoidance under (1) 11 U.S.C. §548(a)(1)(B), or (2) alternatively, §544(b). [Adv. Doc. #28, pp. 3-4]. Plaintiff ultimately seeks summary judgment on

---

13/ Document No. 16 used the "Incorrect Docket Event Code," for the Correct Docket Event, see Document No. 17. For this reason, the docket in Case No. 19-03016 reflects two filings of an Agreed Judgment Entry for Denial of Discharge of Christopher M. Martin.

Plaintiff's fourth claim of the Complaint, and recovery of $21,000.00 under 11 U.S.C. §550 for the benefit of the estate. [Adv. Doc. #28, pp. 4, 11]. In Defendant's Objection,[14] Defendant argues that summary judgment is inappropriate for two reasons. First, because there is a genuine issue of material fact with respect to whether Debtor received reasonably equivalent value in exchange for the funds Defendant used to purchase the Property. [Adv. Doc. #32, pp. 5-6]. Second, based on the alleged exempt status of the transferred funds. [*Id.* at pp. 6-7].

**LAW AND ANALYSIS**

**I.     Summary Judgment Standard.**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S. Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial burden of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."

---

14/  Defendant also appears to request summary judgment in their objection [Adv. Doc. #32, pp. 4, 8].

9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2570, 91 L.Ed.2d 202 (1986).

A genuine issue for trial exists if the evidence is such that a reasonable fact finder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence [] to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

## II.    Claim Two.

Claim Two of the Complaint is brought under 11 U.S.C. §548(a)(1)(B).   Section 548(a)(1)(B) addresses "constructively" fraudulent transfers. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 889, 200 L.Ed.2d 183 (2018)(citing *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 535, 114 S. Ct. 1757, 1760, 128 L.Ed.2d 556 (1994)); *see also, Hagan v. Baird (In re B & P Baird Holdings, Inc.)*, 759 F. App'x 468, 479 (6th Cir. 2019).  The trustee has the burden of showing the applicability of the above provision. *Kovacs v. Berger (In re Berger)*, 2007 WL 2462646, at *3, 2007 Bankr. LEXIS 2884, at *7 (Bankr. N.D. Ohio Aug. 27, 2007)(Whipple, J.)(citing *Shapiro v. Matouk (In re Hayes)*, 322 B.R. 644, 646 (Bankr. E.D. Mich. 2005)).

### A.    Legal Framework for Constructively Fraudulent Transfers Under Section 548.

Subsection 548(a)(1)(B) allows a trustee to avoid a constructively fraudulent transfer. Under this subsection, a debtor's actual intent in making the transfer is irrelevant.

Section 548 provides in pertinent part:

(a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

> . . . .
> (B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made[.]

*Id.*; §548(a)(1)(B)(i)-(ii)(I).

B.    Analysis Under Section 548(a)(1)(B).

    i.    "Transfer"

First, Plaintiff must establish that there was a "transfer." The Bankruptcy Code defines "transfer" to mean "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with— (i) property; or (ii) an interest in property." 11 U.S.C. §101(54)(D).  Attached to Plaintiff's Motion is a copy of a check made payable to Defendant. [Adv. Doc. #28 p. 20, Ex. B].  "For the purposes of payment by ordinary check, therefore, a 'transfer' as defined by §101(54) occurs on the date of honor, and not before." *Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S. Ct. 1386, 1390, 118 L.Ed.2d 39 (1992).  Here, Defendant's bank honored the check on September 10, 2018. [Adv. Doc. #28, Ex. E, p. 35, Q. #14].  The payment by check satisfies the definition of a "transfer" in §105(54)(D) as a mode of parting with property or an interest in property.

    ii.    "Interests of the debtor in property"

Second, Plaintiff must establish that Debtor had an interest in the property transferred at the time of the transfer. 11 U.S.C. §541(a)(1)(B).  Attached to the Trustee's Motion is Debtor's bank statement[15] that specifies the deposit of $21,466.47 from an Edward Jones Investment Account held in Debtor's name. [Adv. Doc. #32, Ex. A].  Also attached to the Motion was Debtor's Answer to U.S. Trustee's Amended Complaint, in which Debtor admits that the transferred funds belonged to the Debtor. [Adv. Doc. #33-1, Ex. G, Q. #26; Adv. Doc. #28, Ex. H, p. 53, ¶26].

    iii.    "Within two years before the date of the filing of the petition"

Third, Plaintiff must establish that the transfer was made within two years before the

---

15/  There is circumstantial evidence of the document being authenticated if the bank statement is one of the documents produced to Plaintiff under the Request for Production. *See, e.g.*, *Welch v. Bissell*, 2013 WL 6504679, at *4, 2013 U.S. Dist. LEXIS 173397, at *12 (N.D. Ohio Dec. 11, 2013).

11

Debtor filed his bankruptcy petition. As discussed above, the Transfer occurred on September 10, 2018 when Defendant's bank honored the check. [Adv. Doc. #28, Ex. C, p. 21]. The Debtor filed for relief under Chapter 7 of Title 11 of the United States Code on or about February 7, 2019, 150 days later. [Adv. Doc. #33-1, Ex. G, p. 2, Q. ##7, 8; Adv. Doc. #28, Ex. H, p. 44, ¶¶7, 8]. Further, the Trustee's Complaint alleged: "That the Transfer occurred within two (2) years of the Debtor seeking bankruptcy relief," which Defendant admitted in Paragraph 25 of her Answer, meeting the requirement of 11 U.S.C. §548(a)(1). [Adv. Doc. #1, p. 4, ¶25; Adv. Doc. #9, p. 2, ¶25]. Thus, there is no dispute that the Transfer occurred within two years before Debtor filed his bankruptcy petition.

iv. "Reasonably equivalent value"

Fourth, Plaintiff must establish that Debtor "received less than a reasonably equivalent value in exchange for such transfer." The statute does not define "reasonably equivalent value," but 11 U.S.C. §548(d)(2)(A) does specify what "value" means for the purpose of §548:

"value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.

"Reasonably equivalent value" is determined under the following analysis: the court first determines whether "a debtor received any value for the exchange," and "[i]f value was received, the court then determines whether the value received was reasonably equivalent to the value surrendered." *Slone v. Dirks (In re Dirks)*, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23 (6th Cir. BAP 2009)(unpublished table opinion).

One of the main points of contention between the parties is whether Debtor received reasonably equivalent value when he transferred the funds for the down payment on the purchase of the Property. Plaintiff argues that Defendant's use of funds is not relevant because Defendant did not provide reasonably equivalent value to the Debtor after receiving the Transfer. [Adv. Doc.

12

#28, p. 7]. Plaintiff's factual basis[16] to establish and support his evidentiary burden are responses to his first request for admissions and interrogatories. [Adv. Doc. #28, p. 25, Ex. E]. In Plaintiff's third request for admission, Defendant admitted that "the Debtor provided to you funds for the purchase of the [Property]." [*Id.*]. In Plaintiff's nineteenth interrogatory, Plaintiff asked the Defendant to "please describe what consideration and value you provided to the Debtor in return for such payments." Defendant answered:

**ANSWERS:**

**There was definite financial benefit to be realized by Christopher moving in to 110 Columbus Ave. Through the $21,000 down payment, I considered him to have equal interest in the home and planned for it to eventually become marital property. We both put work into the home including painting, landscape repair, cosmetic improvements.**

**There was a considerable savings to Christopher by moving to Huron from Vermilion. He is 15 miles closer to work (a 30 mile savings per day, and time savings when called in on weekends). Instead of two sets of utilities, insurance, internet, cable and "rent", our finances would be combined with one internet, cable, and insurance cost, saving him half of the total cost of each of these per month. Christopher would also be able to get rid of his storage unit ($100 savings per month) due to the garage now available for his use.**

**Home and auto insurance would be lessened due to multi line discounts. Laundry was previously a separate cost and expenditure of time to take it to a laundromat. His apartment in Vermilion was in poor condition with odors (including neighbor's drug use) contributing to flare up of his asthma and was not an environment where he could continue to live and be healthy.**

[*Id.*].

Plaintiff argues that the Debtor did not receive reasonably equivalent value because any value Debtor received was for the "rent" Debtor paid Defendant. Plaintiff points to Defendant's response to his fourteenth interrogatory to support his position: "Beginning in January 2019, [Debtor] paid me (in cash) monthly for rent toward the house payment, shared utilities, groceries and incidental home expenses. Payment ranged from $900 to $1300 per month depending on

---

16/ In Plaintiff's Motion, he asserts these facts are not disputed. [Adv. Doc. #28, p. 7].

[Debtor's] available money and the actual cost of utilities and expenses." [*Id.*].

Defendant responds that there was reasonably equivalent value that, when viewed in the light most favorable to the nonmoving party, would support a judgment in her favor. Defendant's position is that Debtor contributed to the down payment for the purchase of the Property because Debtor and Defendant planned to get married. [Adv. Doc. #32, pp. 5-6]. Defendant asserts she also provided reasonably equivalent value by agreeing to pay the tax liability associated with the withdrawal from Debtor's IRA. [Adv. Doc. #32, p. 6]. Lastly, Defendant argues that "value" was given because Debtor's expenses have been reduced by $14,500.00 as a result of living at the Property. [*Id.*]. Defendant attached a Declaration of Kathleen E. McConegly and a Declaration of Christopher Martin that set forth the factual assertions to support Defendant's argument that reasonably equivalent value was given:

- $4,400 in taxes Defendant agreed she would pay.

- The thirty-mile savings per day on Debtor's commute to work for weekdays and weekends.

- A lowering of $800 a month in expenses for utilities, insurance, cable and rent.

- Savings of $100 a month since having a garage meant Debtor did not need a storage unit.

- Debtor's ability to do laundry at the Property instead of a laundromat.

- Home and auto insurance costs have been reduced.

- Debtor's health issues have improved since he started living at the Property.

[Doc. #32, pp. 10, 13, Declaration of Kathleen E. McConegly, ¶¶12-13, Declaration of Christopher Martin, ¶¶10-12].

There are several problems with Defendant's assertions.

The first issue is the timing of the "value" that Defendant claims was given to Defendant. The Sixth Circuit Court of Appeals has held that: "The critical time is when the transfer is 'made.'"

14

*Allard v. Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995), *cert. den. Allard v. Hilton*, 517 U.S. 1168, 116 S. Ct. 1568, 134 L.Ed.2d 667 (1996)(citing *Copper v. Ashley Commc'ns, Inc. (In re Morris Commc'ns NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990)(quoting Collier on Bankruptcy §548.09 at p. 116 (15th ed.1984))). While some decisions have limited *Chomakos* because it involved the value given in gambling transactions, there is substantial authority that for purposes of determining "value," courts should look at the time of the transaction. *See*, *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 319 B.R. 134, 138-40 (Bankr. E.D. Ky. 2004), *aff'd, In re Wilkinson*, 196 Fed. App'x. 337 (6th Cir. 2006)("The date for determining reasonable equivalence is the date of the transfer."); *Se. Waffles, LLC v. U.S. Dep't of Treasury (In re Se. Waffles, LLC)*, 460 B.R. 132, 139 (6th Cir. BAP 2011) *aff'd, In re Se. Waffles, LLC*, 702 F.3d 850 (6th. Cir. 2011); *Nathan v. Libra (In re Libra)*, 584 B.R. 550, 559-60 (Bankr. E.D. Mich. 2018); *see also,* 5 Collier on Bankruptcy, ¶548.05[2][b] at 548-72 (16th ed. 2020)("Likewise, any consideration given after the transfer may not be weighed unless it was part of the original bargain.").

Further, the definition of "value" specifically states that it "does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor; . . .". *See*, 11 U.S.C. §548(d)(2)(A).

Going through the items that Defendant claims to represent "value," the promise to pay $4,400.00 in taxes and/or penalties for the withdrawal of funds from the Debtor's IRA does not appear to be enforceable under Ohio law unless it was in writing. *See*, O.R.C. §1335.05 ("No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, . . . of another person" unless there is an agreement "in writing and signed by the party to be charged[.]"). The affidavit of Defendant states that the promise to pay the $4,400.00 was verbal.

15

[Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶8]("I verbally committed to him I would pay."). Nor has any evidence been presented, or even assertion made, that the $4,400.00 was actually paid. To the extent that this could be considered a "unperformed promise to furnish support for the debtor," it would be excluded from "value" under the statutory definition. *See, cf. United States v. Key*, 2020 WL 6821687, at *3, 2020 U.S. App. LEXIS 36656, at *9 (6th Cir. Nov. 20, 2020)("[Transferee] needed to prove that he actually paid the back-taxes at the time of the transfer in order to demonstrate that there was an exchange of 'reasonably equivalent' value. Simply promising to pay taxes is insufficient, because an 'unperformed promise' does not constitute 'value.'").

Similarly, it is difficult to see how the savings that are asserted actually started until the Debtor moved into the Property "in January 2019." [Adv. Doc. #32, p. 10, Declaration of Kathleen E. McConegly, ¶12]. The Transfer of the approximately $21,000.00 was made on September 10, 2018, and according to Defendant's Declarations, Debtor moved into the Property no earlier than January 1, 2019, which is 113 days later.

There is no evidence or explanation how any savings on mileage for Debtor's commute, the lowering of utilities, insurance, cable and rent, or the reduction in home and auto insurance could have been commenced at the time of the Transfer.

The Defendant and Debtor cite to the reduction in storage costs in their Declarations, but Debtor listed a $100.00 a month expense for storage on Schedule J, filed under penalty of perjury on February 7, 2019. The box was checked, at the bottom of Schedule J, reflecting that no changes in expenses were expected. It will be difficult to show that the reduction in storage costs was part of the "deal" to give Defendant the $21,000.00 when the Debtor's Schedule J reflects that he did not know he would be saving that money more than four months later.

Although Plaintiff is correct, that the value a debtor receives must be comparable to the worth of the transferred property, the debtor need not collect a dollar-for-dollar equivalent and must only receive "reasonably equivalent value" to the value surrendered. *See*, *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 548, 114 S. Ct. 1757, 1767, 128 L.Ed.2d 556 (1994)("the inquiry under §548(a)(2)(A)—whether the debtor has received value that is substantially comparable to the worth of the transferred property—is the same for all transfers."); *Slone v. Dirks (In re Dirks)*, 407 B.R. 442, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **22-23 (6th Cir. BAP 2009)(unpublished table opinion).  Additionally, it has been held that "reasonably equivalent value" does not include emotional and non-economic benefits. *See, DeGiacomo v. Sacred Heart Univ., Inc. (In re Palladino)*, 942 F.3d 55, 59 (1st Cir. 2019)(citing *Tavenner v. Smoot*, 257 F.3d 401, 408-09 (4th Cir. 2001)).

However, "reasonably equivalent value is not an esoteric concept" and is not limited to money or to value transferred pursuant to a "valid contract." *Nathan v. Libra (In re Libra)*, 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018)(quoting *VFB, LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) and *BankEast v. Shirley (In re Shirley )*, 2011 WL 4054773, at *10, 2011 Bankr. LEXIS 3496, at *30 (Bankr. E.D. Tenn. Sept. 12, 2011)(quoting *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 560 F.3d 717, 722 (7th Cir. 2009)))(alteration omitted); *see also, Reinbold v. Morton Community Bank (In re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 604 (Bankr. C.D. Ill. 2017).  The Sixth Circuit Court of Appeals has stated that the focus should be placed on the "consideration received by the debtor," and "not the value given by the transferee." *In re Shirley*, 2011 WL 4054773, at *10, 2011 Bankr. LEXIS 3496, at *31 (citing *Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed. App'x. 450, 454 (6th Cir. 2007)).  Furthermore, calculating "reasonably equivalent value" is fact specific. *In re Dirks*, 407 B.R. 442, 2009 WL 103606, at *7,

2009 Bankr. LEXIS 47, at **22-23 (6th Cir. BAP 2009)(unpublished table opinion)(citing *In re Wilkinson*, 196 Fed. App'x. 337, 341 (6th Cir. 2006)); *see also*, *Onkyo Eur. Elecs. GMBH v. Glob. Technovations, Inc. (In re Glob. Technovations)*, 694 F.3d 705, 719 (6th Cir. 2012)(citing *In re Wilkinson* 196 Fed. App'x. at 341).[17]  When reasonably equivalent value is at issue, the question is itself a factual one, and "[s]ummary judgment is rarely appropriate." *DeGirolamo v. Truck World, Inc. (In re Laurel Valley Oil Co.)*, 2009 WL 1586602, at *5, 2009 Bankr. LEXIS 4631, at *14 (Bankr. N.D. Ohio May 19, 2009)(citing *In re Wilkinson*, 196 Fed. App'x. at 341).

Defendant's and Debtor's Declarations create a genuine issue of material fact as to reasonably equivalent value when viewed in the light most favorable to Defendant's position, because the factual allegations in Defendant's and Debtor's Declarations could result in the court finding that the Debtor received reasonably equivalent value.  Thus, there is a genuine issue of material fact that precludes summary judgment.

v.    "Insolvent"

Fifth, Plaintiff must establish that the Debtor was "insolvent" on the date the transfer was made.  The Bankruptcy Code defines insolvency with respect to an individual's financial condition in pertinent part as follows:

The term "insolvent" means—

(A)    with reference to an entity other than a partnership and a municipality, *financial condition such that the sum of such entity's debts is greater than all of such entity's property*, at a fair valuation, exclusive of—

(i)    property transferred, concealed, or removed with intent to hinder, delay or

---

17/  Before deciding *In re Glob. Technovations*, the Sixth Circuit Court of Appeals had "not squarely held that it applies the clear-error standard to a bankruptcy court's determination of reasonably equivalent value, but it ha[d] held in an unpublished case that 'whether [a debtor] received reasonably equivalent value [in a fraudulent-transfer case] is a question of fact.'" *Id.*  However, the Sixth Circuit Court of Appeals expressed their "agreement with the majority of Circuits" in adopting the clearly erroneous standard of review because reasonably equivalent value of a transfer is a question of fact. *Id.* ("The First, Second, Fourth, Fifth, and Eighth Circuits apply a clear-error standard."(collecting cases)(citations omitted)).

> defraud such entity's creditors; and

>     (ii)   property that may be exempted from property of the estate under section 522 of this title[.]

11 U.S.C. §101(32)(A)(i)-(ii)(emphasis added).

This statutory definition is known as the "balance sheet" approach. *See, Limor v. Anderson (In re Scarbrough)*, 2019 WL 1418698, at *5, 2019 Bankr. LEXIS 933, at *13 (6th Cir. BAP Mar. 28, 2019). Under this approach, a bankruptcy court makes a finding of the value of debtor's liabilities and assets in order to determine insolvency. *Id.; see also, Shapiro v. Woodberry (In re Woodberry)*, 621 B.R. 665, 671-72 (Bankr. E.D. Mich. 2020)(finding insolvency on a motion for summary judgment after the trustee specifically pointed the court to evidence of assets and then liabilities such as filings with the court, testimony at a §341 meeting, and proofs of claims filed in the underlying bankruptcy case).

In *Scarbrough*, the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals reversed the bankruptcy court's finding of insolvency when the plaintiff-trustee only "pointed to the Debtor's schedules to show that the Debtor was insolvent" at an earlier point in time. 2019 WL 1418698, at *6, 2019 Bankr. LEXIS 933, at *16. The Bankruptcy Appellate Panel stated that the plaintiff-trustee did not "succeed in justifying summary judgment in her favor" because she did not show "concretely that the Debtor was insolvent, or became insolvent" at the time of the transfer. 2019 WL 1418698, at *7, 2019 Bankr. LEXIS 933, at **17-18.

"The Trustee cannot rely on evidence too far in the past or future, because such evidence does not paint a clear picture regarding the Debtor at the time of the transfer." *Id.* (citing *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x. 337, 340 (6th Cir. 2006); *Hunter v. Sylvester Material Co. (In re Turkeyfoot Concrete, Inc.)*, 198 B.R. 506 (Bankr. N.D. Ohio 1996)). The Bankruptcy Appellate Panel went on to conclude that coupled "with the Trustee's heightened

summary judgment obligations due to her burden of proof at trial, as well as the prohibition at the summary judgment stage against drawing inferences in the Trustee's favor," insolvency is a genuine issue of material fact that cannot be resolved on a motion for summary judgment based on a debtor's previous bankruptcy filings and the value received in exchange of an alleged fraudulent transfer. *Id.*

Plaintiff asserts that under the theory of "retrojection" Debtor's schedules establish insolvency. Under the theory of retrojection, when a debtor is shown as insolvent at a date after the transfer in question (typically the petition date), and the debtor's financial condition did not change during the period, insolvency relates back to the date of the transfer and insolvency is inferred.

In *Scarbough*, the Bankruptcy Appellate Panel recognized that the trustee could not succeed in showing insolvency based on retrojection in their motion for summary judgment because in the "context of the motion, inferences should not have been drawn in [the trustee's] favor." *In re Scarbough*, 2019 WL 1418698, at *6, 2019 Bankr. LEXIS 933, at *16. Although the Bankruptcy Appellate Panel made clear that inferences cannot be established in favor of the plaintiff-trustee on summary judgment, the Bankruptcy Appellate Panel did recognize the following:

> If the Trustee were presenting her case at trial, when the bankruptcy court could permissibly draw inferences in her favor regarding, for example, the absence of any change in the Debtor's financial picture between the [transfer] and the bankruptcy filing she may have been able to . . . extrapolate back in time to show that the Debtor must have been insolvent on the transfer date.

*Id.* (citing *Daneman v. Stanley (In re Stanley)*, 384 B.R. 788, 807-08 (Bankr. S.D. Ohio 2008)(explaining retrojection)).[18]  However, like in *In re Scarbough*, at the summary

---

[18]/  The *Scarbough* court held that the bankruptcy court did not err in finding insolvency based on a transfer that

judgment stage, the court cannot draw "inferences in the Trustee's favor." 2019 WL 1418698, at *7, 2019 Bankr. LEXIS 933, at *18. Instead, "the court must view the evidence and draw all reasonable inference in favor of the non-moving party, . . ." *Id.* Accordingly, Plaintiff has not met his burden at the summary judgment stage in establishing insolvency. Moreover, if Debtor's Declaration is accurate, [Adv. Doc. #32, p. 12, Declaration of Christopher Martin], then Debtor has changed his story, with an explanation.[19] The credibility of that explanation is an issue for trial.

### III.     Claim Three.

Plaintiff seeks summary judgment on claim three of its Complaint. Section 544 of the Bankruptcy Code grants a trustee, at the time of filing, the status of a hypothetical unsecured creditor of the debtor, thus allowing the trustee to exercise those rights held by such creditor under

---

occurred forty-two days before debtor filed her petition.

> [G]iven the absence of a serious challenge to the Cliffview Transfer on appeal, the Panel finds no error in avoiding that transfer . . . she gave to the Debtor in April 2015. Even without a waiver of the challenge, the proximity between the execution of the schedules and the Cliffview Transfer likely warranted the bankruptcy court's retrojection analysis as to that transfer.

*Id.* However, the Bankruptcy Appellate Panel made clear that fourteen months, "even at trial . . . would probably result in 'stretching retrojection analysis past its breaking point.'" *Id.* (citing *Daneman v. Stanley (In re Stanley)*, 384 B.R. 788, 807 (Bankr. S.D. Ohio 2008)). Insolvency on one date "may form the basis for the inference that insolvency existed on another date if the dates are relatively close in time and if no significant transactions occurred between the two dates." *Id.* (citing *Stanley*, 384 B.R. at 808 (nearly two years too long); *Gold v. Laines (In re Laines)*, 352 B.R. 397, 402 n. 6 (Bankr. E.D. Va. 2005)(holding that January 4, 2004 schedules and statement of financial affairs could not be used to infer insolvency as of the date of transfers that occurred on March 22, 2001, March 26, 2001 and December 26, 2002); *Dahar v. Jackson (In re Jackson)*, 318 B.R. 5, 16–17 (Bankr. W.D. Ky. 2004)(over two-year gap was too long); *Nicholls v. Jones (In re Jones)*, No. 02-12799, 2004 WL 826031, at *4 (Bankr. D. Colo. Feb. 5, 2004) (five-month gap was too long); *Washington Bancorporation v. Hodges (In re Washington Bancorporation)*, 180 B.R. 330, 334 (Bankr. D.C. 1995) (six-month gap was too long); *War Eagle Floats, Inc. v. Travis (In re War Eagle Floats, Inc.)*, 104 B.R. 398, 400 (Bankr. E.D. Okla. 1989) (six-month gap was too long)). Here, the Transfer was 150 days before Debtor's Chapter 7 was filed, which is close to six months than it is to forty-two days. On summary judgment, that appears to be too long a period to infer insolvency through retrojection.

19/  The information in a party's schedules may or may not be admissible at trial, depending on a number of factors not relevant at this stage of the proceedings.

applicable nonbankruptcy law.[20]

"Essentially, this provision permits the trustee to 'stand in the shoes' of an unsecured creditor and assert causes of action under state fraudulent conveyance laws for the benefit of all creditors." *Baumgart v. Vrooman (In re Vrooman)*, 2014 WL 3436292, at *5, 2014 Bankr. LEXIS 3042, at *8 (Bankr. N.D. Ohio Mar. 17, 2014)(quoting *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (6th Cir. BAP 2007)).  The Bankruptcy Appellate Panel has previously noted that the plain language of §544(b) contains four requirements:

1.  A creditor,

2.  holding an allowable unsecured claim; and

3.  a transfer of an interest of the debtor in property,

4.  that is voidable under applicable [state] law.

*Belfance v. Bushey (In re Bushey)*, 210 B.R. 95, 100 (6th Cir. BAP 1997)(footnote omitted);  *In re Walker*, 566 B.R. 503, 540 (Bankr. E.D. Tenn. 2017)(citing *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (6th Cir. BAP 2007)(quoting *In re Bushey*)).  After the first two elements are satisfied "the inquiry shifts: Would this creditor have standing under applicable law to prosecute the avoidance action brought by the trustee?" *In re Bushey*, 210 B.R. at 101.

The applicable state law is the Ohio Uniform Fraudulent Transfer Act, which provides:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the

---

20/  Section 544(b)(1) provides in pertinent part:

[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. §544(b)(1).

debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

O.R.C. §1336.05(A)(1).[21]

The relevant Ohio law and 11 U.S.C. §548(a)(1)(B) are nearly identical and contain "the same 'reasonably equivalent value' requirement." *Suhar v. Bruno (In re Neal)*, 541 Fed. App'x. 609, 612 n.4 (6th Cir. 2013)(citing *Slone v. Dirks (In re Dirks)*, 407 B.R. 442, 2009 WL 103606, at *7, 2009 Bankr. LEXIS 47, at **20-22 (6th Cir. BAP 2009)(unpublished table opinion)(addressing the similarity between §548(a)(1)(B) and O.R.C. §1336.04(A)(2)(a) and (b))); *see also, Silagy v. Morris*, 2015 WL 853499, at *13, 2015 U.S. Dist. LEXIS 23565, at *36 (N.D. Ohio Feb. 26, 2015)(recognizing that "§548 and [O.R.C.] §1336.05 reveal[] that they are virtually identical with respect to the elements that need to be proven.").

Defendant's and Debtor's Declarations create a genuine issue of material fact as to reasonably equivalent value when viewed in the light most favorable to Defendant's position because the "value," such as lower monthly expenses and shorter commutes, could result in the court finding that the Debtor received reasonably equivalent value. Thus, there is a genuine issue of material fact that precludes summary judgment under Ohio law.

Because there is a genuine issue of material fact as to reasonably equivalent value, this court does not need to resolve the difficult issue posed at this stage of the proceedings under Ohio's Uniform Fraudulent Transfer Act, which presumes insolvency for a "debtor who is generally not paying his debts as they become due."[22]

---

21/  It should be noted that Plaintiff refers to a constructively fraudulent transfer only under O.R.C. §1336.05(A) and not a constructively fraudulent transfer under §1336.04. *In re Hanson*, 373 B.R. 522, 525 (Bankr. N.D. Ohio 2007)("1336.05(A) . . . applies only to prepetition creditors.").

22/  *See, DeGirolamo v. McIntosh Oil Co. (In re Laurel Valley Oil Co.)*, 2012 WL 2603429, at *5, 2012 Bankr. LEXIS 3062, at *13 (Bankr. N.D. Ohio July 5, 2012)(discussing whether a debtor experiencing a cash flow shortage could suggest a debtor is not paying its debts as they become due); *Daneman v. Stanley (In re Stanley)*, 384 B.R. 788, 808

## IV.    **The Individual Retirement Account.**

The status of the approximately $21,000.00 that was transferred is also in dispute.  The parties disagree as to whether the funds remained exempt after Debtor's withdrawal and transfer of the $21,000.00 from his IRA to Defendant.  For a number of reasons this issue does not affect the court's decision at this stage of these proceedings.

First, the court gave both parties an opportunity to file motions for summary judgment, but Defendant did not file one on her own behalf. [Docs. ##20, 26].  While Plaintiff-Trustee filed a Motion for Summary Judgment [Doc. #38], Defendant only filed an Objection to Motion for Summary Judgment. [Doc. #32].

Second, Defendant's "Objection" does not point the court to the specific parts of the record that support the claimed exemption defense. *See,* Fed. R. Bankr. P. 7056; Fed. R. Civ .P. 56(c); *See e.g.*, *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)("The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.").

Defendant argues that the Bankruptcy Code would require the withdrawal of the $21,000.00 to "be put back in the IRA" [Doc. #32, pp. 6-7], because the money in the IRA was

---

(Bankr. S.D. Ohio 2008)(facts that the debtor "was not paying her debts to" some creditors but "generally was paying her credit card debt and car payment" did not establish that the debtor "was not paying her debts as they became due"); *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 796 (Bankr. S.D. Ohio 2009)("Under the Ohio UFTA, '[a] debtor is insolvent if the sum of the debts . . . is greater than all of the assets . . . at a fair valuation. A debtor who generally is not paying his debts as they become due is presumed to be insolvent.' Insolvency is essentially a balance-sheet test."(citation omitted)); *Thermo Credit, LLC v. DCA Servs., Inc.*, 2017 WL 5128998, at *5, 2017 U.S. Dist. LEXIS 171996, at *13 (S.D. Ohio Oct. 17, 2017), *aff'd*, 755 F. App'x 450 (6th Cir. 2018)(same); *Reiser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 649-52 (Bankr. S.D. Ohio 2006)(mentioning O.R.C. §1336.02(A)(2) but finding insolvency on other grounds).  *But see Kovacs v. Berger (In re Berger)*, 2007 WL 2462646, at *7, 2007 Bankr. LEXIS 2884 at **18-19 (Bankr. N.D. Ohio Aug. 27, 2007)("Debtors testified that they were unable to pay their debts at the time they filed their bankruptcy petition.  Insolvency on the date of filing is, therefore, presumed and Defendant offered no evidence to rebut this presumption."); *McLane Food Serv., Inc. v. Rao*, 2012 WL 2073481, at *8, 2012 U.S. Dist. LEXIS 79573, at **24-26 (S.D. Ohio June 8, 2012)(concluding that an inference of insolvency is appropriate because the debtor's net worth two years before filing was negative $1.5 million or greater and when debtor filed for relief, debtor had assets of $729,000.00 and liabilities exceeding $4 million).

exempt before it was withdrawn. The problem with this argument is that the Defendant is asserting an exemption that the Debtor never claimed. [Doc. #1, Schedule C, pp. 16-17; Adv. Doc. #32, p. 13, Declaration of Christopher Martin, ¶8]("I did not list the IRA in my bankruptcy schedules since the IRA was liquidated in September, 2018, and I filed almost 5 months later in February 2019.").

Moreover, 11 U.S.C. §522(b) "permits a 'debtor' to exempt property from property of the estate, but no provisions of the Bankruptcy Code provide standing for non-debtor third parties to claim exemptions in property of the estate." *In re Cathcart*, 203 B.R. 599, 604 (Bankr. E.D. Va. 1996)(emphasis removed)(citing cases, including *Joelson v. Tiffin Sav. Bank (In re Everhart)*, 11 B.R. 770 (Bankr. N.D. Ohio 1981)(transferee of preferential payment lacked standing to assert debtor's entitlement to exemption of the transferred funds)). Defendant has cited no authority that would permit her to claim an exemption on the Debtor's behalf.

Further, it appears that Defendant is asking this court to, in effect, "do equity" in a manner that would appear to conflict with specific statutory provisions and explicit mandates of the Bankruptcy Code. *See, Law v. Siegel*, 571 U.S. 415, 420-21, 134 S. Ct. 1188, 1194-95 (2014). Defendant asserts that the $21,000.00 would have remained exempt if Debtor never paid the funds: "It would be astonishing if the Bankruptcy Code, which is one of equity, would support finding of a fraudulent transfer under the facts of this case." [Doc. #32, p. 6]. Because this is a plea for equity, unsupported by reference to any statutory authority, Defendant's request can be justified, if at all, under §105(a) of the Bankruptcy Code.

However, bankruptcy courts are not free to employ §105(a) as a general license to do equity as they perceive it. This is especially true where the relief that is requested conflicts with, or contravenes, a specific provision of the Bankruptcy Code. *Law*, 571 U.S. at 422, 134 S. Ct at 1195.

25

Defendant's argument appears to conflict with §522(g) of the Bankruptcy Code, which addresses when a debtor is able to exempt property recovered by the trustee.[23]  A plain reading of §522(g) precludes a debtor from exempting property recovered by the trustee when the debtor has voluntarily transferred that property. *See, Barbera v. Nathan (In re Barbera)*, 1996 WL 446821, at \*9, 1996 Bankr. LEXIS 965, at \*25 (Bankr. E.D. Mich. 1996), *summarily aff'd*, 156 F.3d 1228 (6th Cir. 1998)(unpublished table opinion); *In re Slane*, 537 B.R. 864, 866 (Bankr. N.D. Ohio 2014)("Section 522(g)(1) permits a debtor to claim an exemption in funds recovered by a trustee if the transfer of the funds was not voluntary and the property was not concealed.").

Here, there appears to be no dispute that Debtor's Transfer was "voluntary" under §522(g)(1).  Debtor's Declaration reflects that the Debtor voluntarily withdrew $21,000.00 from his IRA, placed the monies in a bank account, and then transferred the funds directly to Defendant. [Adv. Doc. #32, p. 13, Declaration of Christopher Martin, ¶¶6, 7].

It is also difficult to see how the Transfer of the funds was not "concealed" for purposes of §522(g)(1).  Debtor's Statement of Financial Affairs Part 12 declares, under penalty of perjury, that he has read the answers on the Statement of Financial Affairs and any attachments, and that they are true and correct. [No. 19-30310, Doc. #1, p. 38].  Debtor's Statement of Financial Affairs reflects: Q. 13: "Within 2 years before you filed for bankruptcy, did you give any gifts with a total

---

23/  Section 522(g) provides in relevant part:

> [T]he debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> > (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
> >
> > (B) the debtor did not conceal such property[.]

*Id.*; *Dickson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585, 592 (6th Cir. 2011).

26

value of more than $600 per person?"  The box for "No" was checked.  Q. 18: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"  The box for "No" was checked.  Q. 20: "Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed . . . .? Include . . . other financial accounts, . . . brokerage houses . . . pension funds…."  The box for "No" was checked.

Accordingly, summary judgment cannot be granted to Defendant on her "exemption" argument.

**THEREFORE**, for the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment be, and hereby is, **DENIED**.